Case number 20-5337, Federal Express Corporation, Appellants v. United States Department of Commerce, et al. Mr. MacArthur for the appellant, Mr. Aguilar for the appellate. Counsel, before you begin, our timer is not working. So I'm afraid I'm going to have to interrupt you to let you know two minutes left and time is up and so forth. But it may come back on. So Mr. MacArthur, if you would begin. Thank you, Judge Henderson, and may it please the court. This case presents a straightforward question of statutory interpretation. Did Congress in the Export Control Reform Act impose strict liability on innocent intermediaries like common carriers who unwittingly facilitate a third person's export violation? The answer to that question clearly is no. Two interpretive principles in particular are decisive. Indeed, I would say that they are independently decisive here. The first is that when Congress uses terms of art that have a long settled meaning, those terms are presumed to mean what they've always meant. The second is that statutes should not be construed to contradict themselves, or as the Supreme Court put it in Bennett v. Speer, to emasculate an entire section. The first principle here, I think, goes to how you would read subsection B if you were considering it standing alone. And the second goes to how subsection B should be understood in light of subsection E, which expressly requires knowledge before liability can attach to transporting regulated items. Both principles point in the same direction here, with the result being that statutory text and structure powerfully combine to confirm that Congress did not impose strict liability on innocent intermediaries. So I'll say a few words about... On your first point, that aiding and abetting, I guess, is a term of art that requires knowing violations. In fact, I'm not sure that's all that settled. First, there's a lot of debate about knowing versus negligence. And then in Iran Air, we said, it is not unusual for Congress to permit the imposition of civil sanctions without proof of the violator's knowledge, which seems to be exactly contrary to your position. So we have already recognized that it's not such a term of art that it always requires knowing conduct, or that it forecloses a strict liability approach. And my third point is that when it comes to regulatory offenses, the Supreme Court has recognized, we have recognized, that in fact, it's times Congress can impose strict liability even in the criminal area for regulatory offenses. And this seems to me like an acutely regulatory area. So tell me more. I've given you sort of three reasons why I'm not so sure there's a settled term of art, and I'd be interested in your thoughts on that. Sorry to do a compound question. No problem. Thank you, Judge Millett. I would start out by saying that we're not disputing that there are significant portions of this export control regime that do impose strict liability, particularly for principals, those who make the decision to export or re-export an item. Our argument really is focused on subsection B and the terms of art that are used there. With regard to whether aiding and abetting could pick up negligence, I would direct the court's attention to this court's precedent in the securities law context, where the court squarely rejected the argument that civil liability for aiding and abetting could be based on negligence, even where the principal violation under the relevant statutory provision was strict liability. I'd also direct the court's attention to the Federal Circuit's decision in the Hitachi case. Think of all of the aiding and abetting precedent that we've cited, that may be the most apposite. That was also a sort of regulatory statute. It was an import statute, and it imposed aiding and abetting liability for aiding and abetting the making of false statements. Aiding and abetting in that statute was not qualified by any express mens rea requirement. The statute just said aiding and abetting, and the statute made expressly clear that the principal, the party who made the false statement, could be held liable based on negligence. And so the government's submission to the court in that case was, well, then the aider and abetter should likewise be able to be held liable based on negligence. And the Federal Circuit flatly rejected that argument as wholly without support and inconsistent with fundamental legal logic. There are courts that have held negligence as an appropriate standard for aiding and abetting liability. And so it's not a settled term of art in that regard. I have not seen those decisions, Judge Millett, and certainly the government on the other side did not cite any of them. I do want to address also your concern about- Let me ask you that directly, then. You would say that there are not cases where we have said negligence is enough where the statute used that term of art, aiding and abetting. Is that correct? That is correct, Judge Sentelle. I have not seen those cases. Your cases, in fact, are flatly to the contrary, the investors' research case in particular. What's the name of that case? I believe it's investors' research. It's cited in our opening. Thank you. I do want to address your concern, Judge Millett, about Iran Air, because I do think that with respect to the issue that's presented in our case, Iran Air really is a red herring. Our case presents a question of first impression, both because there's a new statute that didn't exist at the time of Iran Air, and because it's a new issue that wasn't addressed in Iran Air, namely the liability of an innocent intermediary. Mr. Beckett, before you go on that, there's a new statute, but the language that the statute took is drawn directly from and identical to the regulation at issue in Iran Air, is it not? That is correct. Okay, so it's interpreting the same language. It is the same language of the regulation, but critically, Judge Millett, first point, Iran Air didn't address anything about aiding and abetting. Aiding and abetting was a theory that had not been charged in that case. So the court says nothing about aiding and abetting, nothing about whether that can be strict liability. It did interpret the word cause, which is in the exact same provision that you say that provision requires of knowing mens rea. It did. I think the fairest reading that opinion is the court accepted the agency's strict liability reading of cause in the regulation. But even if you assume that causing liability is strict, that does not get the government over the finish line here, because our fundamental submission about causing liability is separate and apart from mens rea. Our point is that the acts of transporting, transferring, forwarding, the things that a common carrier does are not the sort of acts to begin with that causing liability picks up. And that's because number one, causing liability, just like aiding and abetting, is a term of art with a long settled historical meaning that has never been understood to pick up intermediaries. I think even apart from that sort of term of art understanding, that is the most natural reading of the statutory language here, which talks about causing the doing of a prohibited act. It is at best quite unnatural to say that when FedEx transports packages for its customers, it causes its customers to do something. So do you read... So I'm just trying to understand then how you read the statute. 2A seems to be sort of a principle of liability, right? And then 2B, do you read that as a mix of some things are principles, some are, I guess, accessories for lack of a better term. And so that as we go through B, we have to stop and look at each word and ask whether that word, what mens rea goes with that word. So cause could have strict liability, aid would not, abet would not. What about counsel? I think that all of the terms that are used in subsection B, and this goes back to what Judge Learned had said in Peony in 1938, he said all of them, even the most colorless abet, connote a purposive attitude toward the offense. But then cause is in there too, and you just said cause could be strict liability. Well, I think- That's what we held in Iran Air. So either the mens rea turns on and off as we read through B, or it has a single mens rea. Well, my point on cause, Judge Millett, we do think that it has mens rea. My point is that that's not our fundamental submission. And we- No, no, but we held pretty clearly in Iran Air that cause does not. And so your position would have to be, I think to be consistent with, and that's the exact same language. It was a regulation there, but the statute here just picked up the regulation. So that exact same language we held in Iran Air allows strict liability. And we said the rationale for that is it's not unusual for Congress to permit the imposition of civil sanctions without proof of the violator's knowledge. But I don't want to fight you too hard on that point, Judge Millett, because I do think we win even if causing is strict. But as I read Iran Air, the point that we're really focused on- Just assume there, sorry, finish your sentence. I'm sorry, but I just need to clarify something about what you just said, but go ahead. I was gonna say, as I read the court's decision in Iran Air with regard to knowing, the point that the court really focused on was that the word knowingly had been removed from the regulation in 1980. And I think that's an interpreted factor that would go to the meaning of the regulation that really does not go to the meaning of the statute here absent any evidence in 2018 that Congress was aware that back in 1980, that change to the regulations texts had been made. If, for example- You can go, I'm sorry, go ahead. I was just gonna say, Judge Santel, that if, for example, there had been a prior version of this statute that said knowingly, and Congress amended that to delete the word, then there would be a conversation about what inference to draw from that. I think you would still have to ask, was it dropped to create strict liability or was it dropped because Congress determined that express mens rea requirement wasn't necessary? In any event, do you see any necessary problem with the prospects that a different mens rea would apply to cause and to aiding and abetting? I do not. I think that if you- To turn on and off, as Judge Millett suggested, is that any problem, do you think? I don't think it's any problem. I think it's perfectly appropriate to analyze each of these terms and determine whether they come with a prepackaged mens rea requirement, like courts have, as far as I am aware, uniformly held is the case with aiding and abetting. But I also don't want to lose- Can I follow up on that, though? Is it your position that everything in B except cause? I thought you said this and I could very well have misheard. Everything else in B requires knowledge except for cause. I think that is right. I think that is right, Judge Millett. And I don't want to lose sight here of the point about subsection E, which I think is equally important to the term of art canon that we've been discussing. So in subsection E, Congress expressly addressed the liability of those who, among other things, transport, transfer forward regulated items. And it made those acts civilly sanctionable only when done with knowledge. Now, at no point in this litigation has the government been able to explain why Congress would have imposed a knowledge requirement for those acts in subsection E, while at the same time making those very same acts the basis of strict liability under subsection B. That really would create the very sort of statutory contradiction that both the Supreme Court and this court have consistently refused to read neighboring provisions to create. It would in effect nullify the knowing requirement that Congress included in subsection E. So Commerce utterly fails to offer up a holistic- If Congress knew that all these terms already included knowledge, why would they have had to put that in E? And if your reading of B is adopted, we don't even need E to be in the statute, do we? No, I don't think that's right, Judge Millett. And that was where I think the district court erred. The district court said, well, I understand that the government's reading appears to make a hash of the statute, but so does FedEx's. But that's just wrong. Our interpretation does not deprive subsection B of heft because subsection B covers culpable actors who do not commit any of the acts that are listed in subsection E, but who cause those acts to be done by an intermediary, or who substantially assist those acts. And that is precisely the historic office of aiding and abetting and causing liability, as it appears, for example, in 18 U.S.C. 2. So we have a situation where our reading alone harmonizes the statute. And what I find really remarkable about this case is that the government doesn't really engage at all on the level of text and structure of the statute. They put all of their eggs in the basket of the ratification canon, but the ratification canon doesn't allow you to skip over text and structure in the way that the government has done here. The Supreme Court has been quite clear about that in the Brown versus Gardner case, and last term in the BP case. The court has consistently held that even when the government is making a ratification argument, as in any other statutory interpretation case, you begin with text and structure, and if they supply a clear answer, that is the end of the matter. But even if you get sort of past- There's still another issue here, because it's not just ratification, right? Congress in, I'm sorry, 4826A sort of adopted expressly, this isn't an applied ratification, expressly adopted, but not just the rules and regulations, but also orders, determinations, and all other forms of administrative action that have been taken beforehand and carried that forward. So it's not just even the regulation, but determinations, which would include the decision in Iran Air, other administrative action, which again would include the decision in Iran Air, would include the prior decisions against Federal Express that didn't require any knowledge. All of that, this is sort of quite striking, all of that is carried forward. So Congress not only lifted the regulatory language verbatim and put it into a statute, but then said, we are bringing the whole history of administration, administrative actions and determinations into this statute. So I don't read section 4826, Judge Millett, to adopt any of the prior administrative action. What I read that to do is to continue them in effect. Congress is in effect saying, we're putting this export control regime on a new statutory footing, but we're not starting over from scratch. Commerce has all these regulations and we're not going to make commerce repromulgate them under this new statute. They will remain in effect, but it doesn't- It doesn't- That's not all it says. I understand that point. That's not all it says. It also says we're keeping, we're bringing forward, we're keeping status quo, including determinations and administrative actions, all other, or other, it doesn't have the word all, I'm adding that, or other forms of administrative action. And if those were flatly inconsistent with the statutory text, Congress couldn't have brought them forward. We have to read the statutory text to be consistent with what Congress said. We are continuing under this statute. This will continue under this statute. So doesn't that have to inform the reading of the statutory text? I don't think so, Judge Millett, because I don't think there's anything in section 4826 that deems any prior administrative action to be lawful. It deems it to be in effect. And those are different things. The court has recognized that they are different things. Congress has sometimes deemed action to be lawful. They'll continue in effect. So they're going to continue with this statute. That's correct. Unless changed by commerce. And the statute also says continue unless and until set aside under the authority of this subject. And so if there is administrative action that is inconsistent with the statute, it can be set aside as inconsistent with the statute. And I remember- Congress chose to carry all this. I mean, I just thought it was rather unusual that Congress went that in depth into the regulatory process and carried it forward and said, this will continue in effect side by side with our statutory language. Right. As I say, I think that was done because Congress did not want to start over from scratch. But let me try it this way, Judge Millett. I think that the government is really asking for quite a radical expansion of the ratification canon here. Because again, this case isn't just about, well, this case is about subsection B, but section 4819 has much more than just subsection B and even more than E. It's actually subsections A through J. It's a very long and detailed list of 10 different categories of prohibited acts. And the logic of the government's position here is because that long and detailed list was transplanted from the agency's preexisting regulation that Congress should be deemed to have baked into the statute every administrative interpretation of those provisions that Commerce has applied in countless enforcement actions over the decades, regardless of whether there's any evidence that Congress was aware of those administrative interpretations. And even if those administrative interpretations conflict with the text and structure of the statute. It's not deeming, just to be crystal clear. We're not deeming. This isn't one of congressional silence about what should happen. That's normally where we talk about deeming. Congress said it in terms in 4826A. And it went so far, like I said, it's not just rules or regulations, but it said determinations and administrative actions, which have got to include interpretations. I mean, it's unusual and it's, you know, Congress was biting off a lot, but we've got to give effect to the full breadth of that, do we not? I think you do have to give full effect to 4826. And I think you do that by recognizing that all of those provisions and administrative actions remain in effect. But I do not think that takes off the table, the question whether they are lawful. I see that my time has expired. If there are no more questions, we'll give you some time, Mr. McArthur, in reply. Mr. Aguilar. You need to turn on your- I apologize. I apologize, Your Honor. Sorry about that. Okay. May it please the court, Daniel Aguilar for the federal defendants. The FedEx has brought this case not to challenge a particular enforcement action or to challenge the promulgation of a particular rule, but to seek non-statutory review of the Department of Commerce's longstanding export controls as ultraviaries. The district court correctly rejected that claim on the merits and this court should affirm. So- What do you say to the proposition that aiding and abetting is a term of art, which has traditionally involved the Santa or a mains ray of that sort? That may be the case in other contexts, Your Honor, but I think that this court's unanimous opinion in Iran Air, which at page 1256, quoted the version of this regulation as it stood at the time, material identical to how it stands today and materially identical to the version of the statute that Congress passed, said, this could be read either way. It could be read to have a knowing interpretation or it could be read to impose strict liability. Did that case actually construe the language of aiding and abetting? Yes, Your Honor, it quoted that entire regulation in its entirety at page 1256. The court considered it again in considering whether or not strict liability should be imposed. And it said the statute itself, because at the time, the statutory prohibition just said, you cannot commit violations. If you do, there's a civil penalty. The court says, well, that doesn't have an explicit mentory requirement. And then it said, neither does the charging regulation, which at that time was 78-7.2. Did not specifically discuss the aiding and abetting question that we have here. I don't think the court went at length at it, but the court certainly was aware of the length. I don't think it used the term even in its analysis, did it, the term aiding and abetting? Well, certainly the court was aware of that regulatory text. And in his concurring opinion, Judge Silberman contrasted Iran Air with other cases where he believed strict liability was not appropriate. But he said that that was the correct course in Iran Air because there were, quote, regulations authorizing penalties for non-knowing and non-willful violations. So I think obviously the court did consider the language of the regulation and concluded that the Department of Commerce's application and interpretation of that as imposing strict liability was appropriate. Is there any case you know of that does specifically say that aiding and abetting does not import the knowledge requirement that it has in criminal law? I think that's what Iran Air does. And I think that that's what the court- I thought you just told me that Iran Air did not mention, did not analyze that term, aiding and abetting, and did not specifically state that. Now, is there any case that does? Your Honor, I think Iran Air clearly considered that language. Leave Iran out for a moment. Forget Iran Air is there. Is there any other case you can give me that does specifically take those terms, aiding and abetting, and analyze them in a way that does not require knowledge or similar mens rea? I have not researched that area thoroughly, Your Honor, because I believe that this court's binding precedent on the regulation at issue here is sufficient- I would like that to be a no to my question then, that you know of no such case. I have not done the research on that, Your Honor, no. But again, what I think is important here is that we're here on non-statutory ultraviaries review, right? Congress prohibited APA review of the Department of Commerce's actions in this area, except for cases of enforcement actions. And there it said, when you receive an adverse order under a particular enforcement action, you can have APA review. And there were enforcement actions against FedEx that settled those cases. And then it brought this on non-statutory review, essentially under the lead them versus kind standard. What this court has repeatedly held is that under that kind of action, merely having a disagreement about law is insufficient to prevail on the merits. What there has to be is a patent misconstruction of the act or where the agency has disregarded a specific and unambiguous statutory directive. And I think that given the history here, both of this court's decision are on air, the Commerce Department's decisions across executive administrations, applying that to hold repeatedly that strict liability is appropriate in this regulation. And then Congress's enactment of the 2018 Act, both as Judge Millett was recognizing, keeping in place all regulations, orders and administrative actions as they were, and then separately restructuring the civil penalties provisions to exactly map the existing regulatory structure that the Commerce Department had and that this court had already construed and are on air. It's hard against that backdrop to argue that the application of strict liability in that context is so far beyond the pale as to satisfy ultra vires review. Now this court, in fact, has recognized at least in partial response to Judge Lentil's question, this court said, recognized in Halberstam that it's an open question whether aiding and abetting requires knowledge or some lesser standard. I did not talk about strict liability, but certainly knowledge is not settled law under this circuit's precedent. I believe that's a fair reading, Your Honor. And again, Ron Arum made it clear at page 1258 that the court was satisfied that the agency's reading of the regulation as imposing a strict liability standard is a permissible one. And it again noted back in 1993, it noted contemporary commentators, both in law review articles and I think practical guides about how to comply with the export regulations noted that unknowing violations are not overlooked and that the regulations and statutory structure allow for the imposition of strict liability. And I think it's fair to note that in the district court, FedEx also brought a substantive due process challenge arguing that there wasn't allowed fair notice of this and they aren't pressing that again on appeal, particularly because Ron Arum said, everybody has fair notice of this strict liability standard and that's been a longstanding occurrence. But again, in the district court, FedEx was pressing this argument on the facial construction of the regulations that they were just incompatible with the statutory- They also challenged the interpretation. I think that's the fairest reading of the district court record. I think the district court acknowledged that that could be one of the constructions of the claims. We don't think that that was fairly presented, but if this court wants to go ahead and reach Commerce Department's construction of that, we think that we went on the merits there. So we're not trying to hide the ball on that one, but we are noting that this is a fairly different claim than that which they brought in district court. What do you do? It does seem, the statute specifically talks in section, sorry, subsection E about what FedEx does, right? And for that, it requires a no-in requirement, or a no-in mens rea. And yet under B, you would never have to show that for someone who transfers or transports, because I think anyone who transfers or transports, you could always say either cause or aided and abetted. So tell me how, in particular, as to people who transfer and transport, like FedEx does, it makes any sense to allow that exact activity, transfer, transport, to be stripped of the no-in mens rea if you just charge it under B? Well, I think in this aspect, the statute and the regulations as they existed are intended to just cover the waterfront. It's a belt and suspenders approach that is, again, largely overlapping. Under subsection B, nobody can procure anything that would violate FedEx. It's not that there's some coverage in action, it's that as to these activities, Congress wanted knowledge. So those specific activities, and I know it's a longer list, but for our purposes, we'll talk about transfer, transport, maybe just transport is really all we need to look at. It's not belt and suspenders to say it requires knowledge if you transport under E, but it doesn't require knowledge if you transfer it under B, and it's the exact same activity and it's the exact same theory of liability. That's contradiction. That's not belt and suspenders. I disagree that it would be contradiction, Your Honor. I think it allows for multiple theories of a charging violation. And again, this is the regulatory scheme that the Commerce Department had set up itself before Congress codified it. I think it is just saying, all across the waterfront, we don't want people violating the export laws. And I think that you can make a charging decision under E where there's knowing violations. And here, again, the violations that FedEx was charged with at the outset in the other underlying settlement agreements were shipping items to Syria, which was under a general embargo that required a license to ship anything to Syria. It was shipping $10,000 worth of manufacturing equipment for an electronic microscope to a Pakistani nuclear facility, which was on the entities list. It was shipping 53 items to Aerotechnik France, which was on the entities list for- It should be in a form of transporting? Yes, Your Honor. I believe, yes, that's what we've done and causing the export violation as well under B. And so in these instances, knowledge as the Commerce Department's regulations, and I think as Congress itself recognizes, are appropriately considered at the back end about what the particular kind of remedy should be or sanction. In some cases- It wouldn't be under the back end if you charged them under E. You would actually have to prove it for liability. That's true. And if they've also done something that is permitted under B, you could have it on the back end as well there. I'm just saying that even under B, knowledge isn't insignificant. It's still gonna be considered by the agency. If, for example, I think they give the example of a taxi driver who is helping, there's a passenger in the back seat with a prohibited item, and they're helping them get to the airport or something. In that circumstances, yes, there may be a violation, but both one, a civil penalty in that case may very well not be appropriate. It may, and two, on the decision about whether even to bring an enforcement action against there, right? Are you actually gonna be deterring anybody from future violations of the export laws? It's still rather hard to see why if the statutes don't have any difference, you have both sections of the statute. And if you change, if you use the same standard with respect to knowing or innocent action, why do you have the separate statutes? I'm lost on that. I think it's just the, again, these came from the Commerce Department's initial promulgation. And I think it's the Commerce Department- Why did the Commerce Department initially promulgate the two if there was no difference in that respect? Right, and I think that the legislative, I mean, sorry, the regulatory history here goes back some decades. I don't have a comprehensive analysis of it here, but I think it is to ensure that there are not violations of the export laws in any conceivable way. And to the extent that the canon against surplusage gives the court pause here- That's what I'm asking you about, essentially, is the canon against surplusage. So I'd point to this court's decision in Great Lakes ComNet versus FCC, which we cited in our brief. And there, the claim was that the particular regulatory definition for who's a competitive local exchange carrier under the FONACs would just apply to everybody, every exchange carrier, and it would just be surplusage. And this court rejected the invocation of the canon there because it explained where the text and the history of the regulation makes its meaning clear, the canon against surplusage cannot dictate a different interpretation. So I think both looking to the text, which this court recognized doesn't require knowledge nor does it compel strict liability, but then to the history of that regulation. In her honor, the court went at lengths to describe the interaction between the ALJ and the undersecretary about whether strict liability was permitted under the regulation or whether knowledge was required. The Commerce Department's repeated invocations of the regulation here to provide for strict liability and Congress's actions, approving all of the existing regulations, codifying the regulations into statute, and no indication that Congress was at all dissatisfied with the Commerce Department's invocations of strict liability or this court's decisions. I think all of that demonstrates that at a minimum, the Commerce Department's interpretation and application of the strict liability regime here is colorable and not a patent violation of the congressional authorization in the Export Control Reform Act. And that's the standard that they have to meet for non-statutory ultra vires review. And for those reasons, we'd ask this court to affirm. All right, thank you. Mr. McArthur, why don't you take two minutes and also answer any questions? Thank you, Judge Henderson. I'd just like to start out by emphasizing what we did not just hear, and that's what we've not heard from the government throughout this case. And that's any explanation of how these terms, these statutory terms, these terms of art could be reused in the future. I think that it's worth noting that Congress is not just trying to make a re-read on their own to impose strict liability on common carriers and any real effort to reconcile subsections E and B in a way that it doesn't have subsection B swallowing subsection E. They really are putting all their eggs in this idea of ratification, with the idea being that because Congress borrowed the text of the preexisting regulation, that should pull in with it the prior administrative construction of the text, even in the absence of any congressional awareness. And I do want to focus the court's attention on the AFL-CIO versus Brock decision, which squarely rejected that exact same argument in the exact same scenario where there was a preexisting regulation that had a longstanding administrative interpretation. Congress codified the text of the regulation. The argument was presented to the court that by codifying the text, it brought with it the administrative interpretation and the court said, no. Absent evidence of congressional awareness of the interpretation, that's a misapplication of the ratification canon. Judge Millett, going back to section 4826A, even if you were to accept that that carries forward the prior regulation and makes the regulation untouchable, there still is the question of whether the regulation itself imposes strict liability on common carriers. And for all of the same reasons that we've advanced as to why subsection B of the statute does not impose strict liability on common carriers, I don't think Congress's regulation does either. And so section 4826A would not change the equation. I'll tell you just one other thing that has been very helpful. I'm sorry, did you have a question, Joe Santel? No, go ahead. Here's one other thing that gives me some concern about this case. And that is we're dealing with a statute that is grounded in the protection of national security. The statute is rooted in the War Powers Act. This is meant to protect the United States against serious and profound threats to the nation, to its troops, to its people. In that scenario, when we started dealing with national security where courts are very hesitant, very hesitant to upset the vote because that is not our area of expertise. And so what I'm really struggling with here is because you have some very strong arguments on your side, but the government has Iran Air. It has an express statutory embrace, a bear hug for determinations and administrative actions, all of them that preceded the statute. And we have a recognition in this country that in fact, when it comes to regulatory actions, Congress can impose even criminal liability, let alone civil liability on a strict liability basis. And Iran Air told us that imposing strict liability on people who act without knowledge is not uncommon. And I'm worried about the decision to lower the mens rea from where it has been for 40 years under statutes and regulations and administrative practice is a real policy judgment about national security, a real policy judgment about how much we want people who are engaged in something that's a completely regulated activity. There's no right to export things to foreign countries, put aside a first amendment claim, which you don't have. There's no right to engage in that business if it has any risk of imperiling the United States national security. So just why shouldn't I be worried about loosening the protections that have been in place for 40 years for our national security and that Congress in a lot of ways here and our own circuit precedent seem to have locked in. I appreciate the concern Judge Millett and I think there are a few things to say about that. One is that nothing in the position that we've taken here or if this court were to rule in our favor would undermine commerce's ability to enforce the statute against the principles, the exporters and the re-exporters. And that's what was at issue in Iran Air was a principle. Nothing in our position would prevent commerce from going after them and even going after them on a strict liability basis. And even as to common carriers, I don't think you'd see after a ruling in our favor here that these companies would simply scrap their compliance programs. There would still be liability for knowing facilitation of unlawful exports and companies will want to stay as far away as possible from having any debate about whether they had knowledge of the facts that made the export unlawful. But at the end of the day, it's a question of statutory interpretation. And if you rule in our favor and commerce decides that's a problem, commerce can go back to Congress and ask Congress to address the question of innocent intermediaries, address the question of common carriers. And then Congress would be in a position to- It's not just common carriers. This is my concern is not that FedEx has any interest in imperiling the national security of the United States. I'm sure it doesn't, but it's not common carriers. It's any person who transports, any person. And there are all kinds of individuals and smaller organizations, by-by-night organizations that engage in all kinds of unfortunate activities. And we would be loosening our statutory protections as to everybody who transports. Well, there would still be liability- Everybody who causes AIDS and VETS, induces, procures, all of them, it would be loosened. That is correct, insofar as they could not be held strictly liable, but there still would be liability for knowing violations and commerce could always, there will always be a principle and commerce can always- Yeah, but they may not always, they may not always be able to be found and regulated by the government. Also national security. That's where you really do want belt and suspenders. And this is where we would like to see Congress truly grapple with this problem and weigh the competing interests, because there is a significant interest on the other side. And that's the interest in not imposing harsh administrative civil penalties on companies that are entirely innocent and that are doing their level best to avoid facilitating unlawful exploits. All right, thank you, gentlemen. Madam Clerk, if you'd call the next case.
judges: Henderson, Millett, Sentelle